# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MICHELLE MORENO, | Case No. 1:17-cv-00541-SAB |
|---|---|
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 19, 20) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Michelle Moreno ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from chronic plantar fasciitis; chest pain; pain in her right shoulder post-surgery; neck pain due to whiplash; hepatitis C; diabetes; and obesity. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part.

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on July 8, 2013, alleging disability beginning September 24, 2004.[2] (AR.) Plaintiff's applications were initially denied on November 18, 2013, and on reconsideration on March 19, 2014. (AR 141-146, 149-154.) Plaintiff requested and received a hearing before Administrative Law Judge Brenton L. Rogozen ("the ALJ"). Plaintiff appeared for a hearing on December 30, 2015. (AR 76-102.) On January 21, 2016, the ALJ found that Plaintiff was not disabled. (AR 15-26.) The Appeals Council denied Plaintiff's request for review on February 10, 2017. (AR 1-4.)

## A. Hearing Testimony

Plaintiff testified at the hearing on December 30, 2015. She lives with her daughter and grandson. (AR 79.) She completed the eleventh grade. (AR 81.) She has a certification as a dietician which is no longer current and a certification in money management. (AR 81-82.) She does not have a driver's license. (AR 82.) If she is going somewhere, she gets a ride from her fiancée or her daughter. (AR 82.)

She is unable to work because of her feet. (AR 86.) She sees a foot doctor because her arch has collapsed. (AR 86.) She also is not getting circulation in her feet anymore and she cannot put pressure on her feet because of her diabetes. (AR 86.) She also has high blood pressure and she gets chest pains on her left side. (AR 86.) She had surgery for tendonitis in her right shoulder, but it is coming back again and she has whiplash pain in her neck. (AR 86-87.)

The problems in her feet started about 4 years ago. (AR 87.) She feels like she is walking on glass and she has no circulation in her feet. (AR 87.) Her feet are ice cold sometimes and she has chronic pain up to her knees. (AR 87.) Dr. Ross Nishijima told her that the pain is from lifting so much all her life. (AR 87-88.) She has been seeing Dr. Nishijima, a foot doctor, for 3 years. (AR 88.) Dr. Nishijima checks her feet and he gave her orthotic shoes and built her some arches. (AR 88.) She wears her orthotic shoes as much as she can, especially

---

[2] Plaintiff subsequently amended the alleged onset date to July 3, 2013, the application date.

when she goes shopping. (AR 88.) Dr. Nishijima said that surgery on her feet would help and asked her if she wanted surgery. (AR 90-91.) Plaintiff decided to wait, but she does not have an explanation for her decision. (AR 91.) She has not had injections or physical therapy for her feet and doctors have not suggested physical therapy. (AR 91.) She has not had any other treatment. (AR 92.) She cannot take pain medication because of her hepatitis C, so she takes ibuprofen. (AR 92.) She rests and elevates her feet for 10 hours during the daytime, and she sleeps 5 hours of that time. (AR 92.) She also wraps a hot cloth around her feet. (AR 92.) However, resting her feet does not really help. (AR 92.) The pain gets worse with standing and walking. (AR 92-93.) She cannot walk on gravel and she has a hard time climbing stairs. (AR 93.) Cold and hot weather also make her pain worse. (AR 93.)

She received treatment for her hepatitis C in 1980 and she has not received any treatment in the past 3 years. (AR 93.) Dr. Meenakshi Dhingra is supposed to send her to the liver doctor. (AR 93-94.) She has liver disease and her enzymes are very high so she is going to have a liver biopsy. (AR 94.) She saw Dr. Min Win regarding a liver biopsy, but he could not do the biopsy due to her high blood pressure. (AR 94.) Now that her blood pressure is better with medication, they are going to recommend she go back for a liver biopsy. (AR 94-95.) The blood pressure medication causes her to be sleepy. (AR 95.)

She gets chest pain at least twice a week both when she is moving around and sitting down. (AR 95.) When she gets chest pain, she sits down and takes Nitroglycerine which makes the chest pain go away. (AR 95-96.) The Nitroglycerine gives her a headache which her doctor says is normal, but the headache goes away. (AR 96.) She sees a heart doctor, Dr. Harcharn Chann, twice a year for an EKG just to make sure she is okay. (AR 96.)

She found out she has diabetes 3 to 4 years ago. (AR 96.) She takes insulin once a day at night. (AR 86, 96-97.) She is on a diabetic diet and she tests her blood sugar. (AR 97.) The night before the hearing her blood sugar was 325, but it averages 198 to 200. (AR 97.) Her doctor tells her not to eat so much fruit. (AR 97.) Her diabetes causes blurry vision for a few hours and jitteriness when her sugar gets too high. (AR 97-98.)

She can stand at one time for 5 to 8 minutes without a walker before she has to sit down.

(AR 88, 90.) She has a walker that was not prescribed, but Dr. Dhingra told her a couple years ago that she should get one. (AR 88-89.) She uses the walker every time she goes outside, but she does not use it in the house. (AR 89.) She uses the walker to keep pressure off her feet and help her walk. (AR 89.) She can walk less than half a block with her walker before having to stop. (AR 89.)

She can sit for 15 to 20 minutes at a time before she has to lie down due to fatigue and feeling like she is going to pass out. (AR 90.) She is fatigued because of her hepatitis C and high blood pressure. (AR 90.) Also, her feet are always in pain. (AR 90.) She can lift 3 lbs., but not for very long. (AR 90.)

She can fix a bowl of cereal, but she does not cook. (AR 98.) She does not do any cleaning because of the pain. (AR 98-99.) Her daughter does the cleaning and sometimes cooks. (AR 98.) She does not do anything socially because she cannot stand on her feet and she wants to lie down. (AR 99.) She can bathe herself and she sits down to put her pants on. (AR 99.) She goes grocery shopping once a week and uses a cart. (AR 99.) She goes to the store when she needs things, but in general, she just goes once a week. (AR 99.) She spends time with her grandchildren. (AR 100.) She is not able to concentrate well. (AR 100.) She can concentrate for two hours before she gets fatigued and needs to lay down. (AR 100.)

Vocational Expert ("VE") Jose Chaparro also testified at the hearing. (AR 100-101.) The only substantive question that the ALJ asked the VE was whether Plaintiff performed her caregiver work at a level of substantial gainful activity. (AR 101.) The VE did not get the earning record, so he did not have an opinion on that. (AR 101.)

**B.     ALJ Findings**

- Plaintiff has not engaged in substantial gainful activity since July 3, 2013, the alleged onset date.
- Plaintiff has the following severe impairments: type II diabetes mellitus and obesity.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- After careful consideration of the entire record, Plaintiff has the residual functional

capacity ("RFC") to perform the full range of light work.

- Plaintiff has no past relevant work.
- Plaintiff was born on August 17, 1965, and was 47 years old, which is defined a younger individual age 18-49, on the date the application was filed. Plaintiff subsequently changed age categories to closely approaching advanced age.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since July 3, 2013, the date the application was filed.

(AR 21-26.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

///

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in evaluating the opinions of her two treating physicians, Dr. Nishijima and Dr. Dhingra. Plaintiff also asserts that the RFC determination is not supported by substantial evidence because the ALJ did not conduct a function-by-function assessment and he ignored the climbing and balancing limitations opined by the consultative examiner, Dr. Rustom Damania. Defendant responds that the ALJ provided good reasons for the weight provided to each opinion in concluding that Plaintiff retained the capacity to perform light work. Defendant contends that substantial evidence supports the RFC and that any error in not including the climbing and balancing limitations is only harmless error.

## A. Treating Physicians' Opinions

First, the Court addresses Plaintiff's argument that the ALJ erred in rejecting the opinions of her treating physicians, Dr. Dhingra and Dr. Nishijima.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632. The factors to be considered include the " '[l]ength of the treatment

relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole.' " Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Ghanim, 763 F.3d at 1161 (quoting Orn, 495 F.3d at 631).

If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)). Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). The ALJ can meet his "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)).

1. Dr. Dhingra's Opinion

Plaintiff argues that the ALJ merely provided a boilerplate finding that Dr. Dhingra's opinion was unsupported by the medical record. Plaintiff asserts that the ALJ did not apply the factors for evaluating a treating opinion set forth in 20 C.F.R. § 416.927(c), as required by

Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017).[3] Defendant argues that the ALJ properly rejected Dr. Dhingra's opinion because the limitations opined by Dr. Dhingra are unsupported by the record. Defendant also argues that the ALJ properly considered that Dr. Dhingra's opinion is based on Plaintiff's subjective complaints.[4] Plaintiff replies that the ALJ did not recognize the length of Dr. Dhingra's treating relationship, the frequency of examination, or the nature and extent of the treatment relationship.

On January 6, 2014, Dr. Dhingra filled out a physical medical source statement. (AR 365-367.) Dr. Dhingra stated the diagnoses are hepatitis C, right shoulder pain status post-surgery, diabetes, and a history of atypical chest pain for which Plaintiff has seen a cardiologist. (AR 365.) Dr. Dhingra wrote that Plaintiff's symptoms are generalized body aches and Plaintiff is "unable to do activities of daily living." (AR 365.) She left blank the question asking for the clinical findings and objective signs supporting her opinion. (AR 365.) She indicated that Plaintiff has had no treatment. (AR 365.) She found that Plaintiff could not walk any city blocks without rest or severe pain per Plaintiff and based on Plaintiff's history. (AR 365.) She opined that Plaintiff could sit for 10 minutes at one time and stand for 5 minutes at one time. (AR 365.) Plaintiff could sit and stand/walk for less than 2 hours in an 8-hour day. (AR 365.) Plaintiff would need to walk every 5 minutes for 5 minutes each time and would need unscheduled 15 minute breaks because of pain/paresthesias and numbness. (AR 365-366.) She indicated that while standing and walking, Plaintiff must use a walker due to pain. (AR 366.) Plaintiff could occasionally lift less than 10 lbs. and rarely twist, stoop, crouch, and climb ladders and stairs. (AR 366.) Plaintiff would be off task for 25% or more of the day, she can only tolerate low stress work, and she would be absent from work more than 4 days per month. (AR 367.)

---

[3] Plaintiff cites to section 404.1527(c), which is the corresponding section for claims for disability benefits and the section that was cited in Trevizo. Section 416.927(c) is the appropriate section for claims for supplemental security income. As Plaintiff applied for only supplemental security income, the Court will refer to section 416.927(c) when discussing whether the ALJ in the instant case correctly applied the factors.

[4] Defendant also asserts that Plaintiff's treatment was conservative and inconsistent with Dr. Dhingra's opinion. However, the ALJ did not provide this as a reason for giving little weight to Dr. Dhingra's opinion. (AR 24.) While the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

On January 14, 2014, Dr. Dhingra completed a county medical form for Plaintiff. (AR 440.) Dr. Dhingra stated that Plaintiff had a medically verifiable condition since 2009 and the condition limits or prevents her from performing certain tasks. (AR 440.) Dr. Dhingra opined that Plaintiff has limitations that affect her ability to work or participate in education or training. (AR 440.) However, Dr. Dhingra also stated that Plaintiff is able to work. (AR 440.)

The Court first addresses Plaintiff's argument that the ALJ did not properly apply the appropriate factors in determining the extent the opinion should be credited. This Court agrees with several other district courts that have concluded that Trevizo does not require an explicit analysis of the factors in section 416.927(c). See Standen v. Berryhill, No. 2:16-cv-1267-EFB, 2017 WL 4237867, at *8 (E.D. Cal. Sep. 25, 2017); Torres v. Berryhill, No. 3:17-cv-01273-H-PCL, 2018 WL 1245106, at *5 (S.D. Cal. March 9, 2018); Hoffman v. Berryhill, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted, 2017 WL 4844545 (S.D. Cal. Sep. 14, 2017)). While there does not have to be an explicit recitation of the factors, the ALJ's decision must reflect that the ALJ considered the factors. Id. Upon review of the ALJ's decision, the Court finds that the ALJ did consider the factors listed in section 416.927(c) in determining the weight to be provided to Dr. Dhingra's opinion. (AR 22-24.) Next, the Court discusses whether the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Dhingra's opinion.

The ALJ discounted Dr. Dhingra's opinion because the opinion is not supported by the available treatment notes or any diagnostic tests. (AR 24.) The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

The ALJ acknowledged that Plaintiff saw Dr. Dhingra for hypertension that was uncontrolled because Plaintiff was not compliant with taking her prescribed medication. (AR 21, 403, 405, 407.) The ALJ also acknowledged that the record indicates that Plaintiff had hepatitis C for over 20 years, but Plaintiff's last treatment was 3 injections over 15 years ago. (AR 21, 347, 383.) On February 9, 2015, Dr. Dhingra noted that Plaintiff had abnormal liver enzymes secondary to hepatitis C and Plaintiff was advised to avoid drinking alcohol and taking Tylenol.

(AR 21, 409.)

The ALJ recognized that Dr. Dhingra had treated Plaintiff for diabetes, but Plaintiff was not monitoring her insulin in January 2015. (AR 23, 318, 411.) At that time, Plaintiff's insulin was increased and she was referred to a nutritionist. (AR 23, 412.) In May 2015, Plaintiff was not monitoring her sugars and her diabetes was uncontrolled requiring another increase in insulin.[5] (AR 23, 398-400, 402.) Even though Plaintiff's diabetes was uncontrolled, she denied any signs and symptoms of hypo-or hyperglycemia, chest pain, shortness of breath, or swelling in her feet. (AR 23-24, 400, 402.)

While Plaintiff contends that the record contains clinical findings that support Dr. Dhingra's opinion, the treatment notes show that the ALJ's interpretation was rational. The treatment notes, as discussed below, do not reveal weakness or other limitations or clinical findings to support Dr. Dhingra's opinion regarding the diagnoses that Dr. Dhingra stated on her medical source statement.

On June 5, 2013, Plaintiff saw Dr. Dhingra for possible diabetes and to check her medications. (AR 320.) There is a note that Plaintiff went to the hospital for chest pain and that she did not have a glucometer. (AR 320.) On June 14, 2013, Plaintiff felt nauseated and had high blood pressure. (AR 318.) Dr. Dhingra noted that Plaintiff had hepatitis C, hypertension, and diabetes. (AR 318.) On January 6, 2014, Plaintiff had a visit with Dr. Dhingra for disability paperwork. (AR 426.) Plaintiff did not report symptoms of hypoglycemia or hyperglycemia or shortness of breath. (AR 426.) On January 14, 2014, during a visit with Dr. Dhingra for lab results, Plaintiff had high blood pressure. (AR 424.) On March 13, 2014, Plaintiff had a physical examination. (AR 423.) Plaintiff complained of shortness of breath, but she had a normal physical examination, except for her appearance and skin. (AR 423.) There is a notation that Plaintiff is obese. (AR 423.) The August 5, 2014 treatment note indicates that Plaintiff has seen a doctor for hepatitis C and plans to have a biopsy. (AR 422.) Plaintiff reported that her blood pressure was not under control. (AR 422.) Plaintiff did not report symptoms of

---

[5] It appears that the ALJ made a typographical error in citing to Exhibit B9F at 9 instead of B9F at 4.

hypoglycemia or hyperglycemia. (AR 422.)

On January 16, 2015, Plaintiff complained of lower back pain, numbness in the left leg, and shooting pain down to the right leg. (AR 411.) However, the only examination that Dr. Dhingra did regarding Plaintiff's legs revealed no clubbing, cyanosis, or edema in the extremities. (AR 411.) During the diabetic foot exam, Plaintiff's monofilament was within normal limits, pulses were 2+ bilaterally, and there were no ulcers. (AR 411.) Dr. Dhingra's February 9, 2015 examination did not have any abnormal findings and Dr. Dhingra noted that Plaintiff had 2+ pulses throughout, no edema in the extremities, and she was in no acute distress. (AR 409.) The only examination results during a February 17, 2015 visit with Dr. Dhingra were that Plaintiff was in no acute distress, well developed, and well nourished. (AR 405.) At an appointment with Dr. Dhingra on May 26, 2015, Plaintiff denied chest pain, shortness of breath, swelling feet, and signs and symptoms of hypoglycemia and hyperglycemia. (AR 400.) Plaintiff's examination was normal. (AR 402.) The diabetic foot exam revealed that monofilament was within normal limits, 2+ pulses bilaterally, and no ulcers were noted. (AR 402.) There was no clubbing, cyanosis, or edema in the extremities. (AR 402.) Plaintiff was in no acute distress. (AR 402.)

In addition, other treatment notes by other medical providers do not support Dr. Dhingra's opinion. On March 6, 2014, Plaintiff saw Dr. Min Win, a specialist at a digestive and liver disease medical center. (AR 382-383.) Plaintiff stated that she did not have chills or abnormal sweating. (AR 382.) She did not have a history of fever, chills, loss of appetite, weakness, weight gain, or weight loss. (AR 382.) She also did not have a history of any gastrointestinal symptoms. (AR 382.) On examination, Plaintiff was alert and oriented, well developed, and well nourished. (AR 382.) Plaintiff had a normal abdominal examination. (AR 382.) On May 23, 2014, Plaintiff saw Dr. Win for a follow-up appointment and had a normal physical examination. (AR 373.)

Plaintiff saw Dr. Harcharn Chann, a cardiac specialist, for her cardiac issues. (AR 295-306, 334-335, 361-363, 385-391.) On March 22, 2013, Plaintiff had a pharmacological cardiac stress test that revealed an abnormal reversible perfusion scan involving the anterior wall of the

left ventricle. (AR 302.) On June 7, 2013, Dr. Chann did a cardiac catherization and found that Plaintiff had no significant obstructive coronary artery disease. (AR 334-335.) During examinations, Dr. Chann noted that Plaintiff was able to sit on the examination table without difficulty or pain, was not in cardiorespiratory distress, had no pedal edema, and had a full range of motion in the neck without pain. (AR 296-297, 299, 305-306, 362, 386, 390.) On April 3, 2014, Plaintiff saw another doctor who works with Dr. Win for cardiac clearance. (AR 375-376.) Plaintiff had a normal physical examination, and specifically, a normal gait, no evidence of motor weakness, normal deep tendon reflexes, no sensory deficit, and no issues with her joints. (AR 375-376.)

Therefore, the Court finds that substantial evidence supports the ALJ's finding that Dr. Dhingra's opinion is not supported by the available treatment notes or diagnostic tests.

The ALJ also discounted Dr. Dhingra's opinion because a note provided by Dr. Dhingra appears to indicate that the opinion is based on Plaintiff's subjective complaints. An ALJ can discount a physician's opinion that is based on a claimant's subjective complaint when the ALJ determines that the subjective complaints of the claimant are not credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Here, the ALJ based his finding that Dr. Dhingra's opinion is based on Plaintiff's subjective complaints on a note provided by Dr. Dhingra stating "paperwork for disability was filled out based on [Plaintiff's] interview (Exhibit B9F at 14)." (AR 24.) However, this note by Dr. Dhingra was written on February 9, 2015. (AR 410.) The two opinions by Dr. Dhingra that are in the record were authored on January 6, 2014, and January 14, 2014. Dr. Dhingra may have authored a third opinion on February 9, 2015, but this opinion is not in the record. As Dr. Dhingra's February 2015 note was written after her 2014 opinions and in conjunction with an opinion in 2015 that is not in the record, the 2015 note does not show that the 2014 opinions were based on Plaintiff's subjective complaints. Therefore, the Court finds that this is not a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Dhingra's opinion. However, as the ALJ provided another reason that is supported by substantial evidence, any error is harmless.

///

1       2. <u>Dr. Nishijima's Opinion</u>

Plaintiff asserts that the ALJ did not apply the factors in section 416.927(c) and merely provided a boilerplate finding that Dr. Nishijima's opinion is unsupported by the record. Defendant counters that the ALJ provided specific and legitimate reasons supported by substantial evidence for explaining the weight he gave to Dr. Nishijima's opinion. Defendant asserts that the ALJ properly found that Dr. Nishijima's opinion is unsupported by the record and inconsistent with the conservative treatment. Plaintiff replies that the ALJ did not recognize the length of Dr. Dhingra's treating relationship, the frequency of examination, or the nature and extent of the treatment relationship.

On February 7, 2013, Dr. Nishijima filled out a county form regarding Plaintiff's physical capabilities. (AR 323-325.) Dr. Nishijima stated that Plaintiff is only able to work at a desk job with no prolonged standing or walking. (AR 323, 324.) He opined that Plaintiff could occasionally (0-2.5 hours for an 8 hour day) lift 10 lbs., never climb, and occasionally balance, stoop, kneel, crouch, crawl, and reach. (AR 324.) Plaintiff should avoid work where she has to stand, walk, lift, and climb. (AR 324.) She can only walk and stand for less than 5 minutes each hour. (AR 324.) She is limited to only minimal standing and walking for what is needed to go to and from work, bathroom, etc. (AR 324.) She can stand/walk for less than 2 hours a day and sit for 6 to 8 hours a day. (AR 325.) She has chronic plantar fasciitis, which is exacerbated with standing and walking. (AR 325.)

On February 6, 2014, Dr. Nishijima completed a physical medical source statement. (AR 369-371.) He diagnosed Plaintiff with chronic plantar fasciitis. (AR 369.) Plaintiff's symptoms were painful feet/heels/arches with standing or activity. (AR 369.) The clinical findings and objective signs were pronated flat feet with painful heels, arches, and bunion. (AR 369.) She was treated with orthotics, but she lost them and they did not help much. (AR 369.)

The ALJ gave little weight to Dr. Nishijima's opinion because it is "not supported by any clinical findings, diagnostic testing, or any evidence of recommendation of aggressive treatment such as surgery except for what the claimant testified to at the hearing." (AR 24.) The ALJ also found that Dr. Nishijima's opinion is not supported by the overall medical evidence of record.

(AR 24.)

The ALJ's general, conclusory statement that "[Dr. Nishijima's] opinions not supported by the overall medical evidence of record" is not a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Nishijima's opinion. Although an ALJ may reject a physician's opinion if it is not supported by any clinical findings or diagnostic testing, here, the ALJ did not even discuss or cite to Dr. Nishijima's treatment notes. (AR 21-25.) The ALJ's decision is far from a detailed and thorough summary of Dr. Nishijima's treatment notes and the ALJ's interpretation thereof. See Magallanes, 881 F.2d at 751 (quoting Cotton, 779 F.2d at 1408). Therefore, the Court finds that the ALJ's finding that Dr. Nishijima's opinion is not supported by any clinical findings or diagnostic testing is not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Nishijima's opinion.

The final reason the ALJ gave for giving little weight to Dr. Nishijima's opinion is that there is no evidence of a recommendation of aggressive treatment such as surgery except for Plaintiff's testimony at the hearing. (AR 24.) However, the failure of Dr. Nishijima to recommend more aggressive treatment without more is not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Nishijima's opinion. See Trevizo, 871 F.3d at 677 ("Moreover, the failure of a treating physician to recommend more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's medical opinion about the extent of disability.").

Therefore, the Court finds that the ALJ erred because he did not give specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Nishijima's opinion.[6]

**B.     Plaintiff's RFC**

Plaintiff asserts that there are two errors with the RFC. She contends that the ALJ did not incorporate the climbing and balancing limitations opined by Dr. Damania into the RFC. She

---

[6] As the Court determines that the ALJ erred in not providing specific and legitimate reasons for rejecting Dr. Nishijima's opinion, the Court does not address Plaintiff's argument that the ALJ did not apply the factors set forth in section 416.927(c).

15

also argues that the ALJ should have conducted a function-by-function assessment which would have addressed climbing and balancing.

Since the ALJ erred by not providing specific and legitimate reasons supported by substantial evidence to reject Dr. Nishijima's opinion and the matter is being remanded for further administrative proceedings, the RFC determination may change upon remand. Therefore, the Court declines to address Plaintiff's arguments regarding the RFC.

### C. The Matter is Remanded for Further Administrative Proceedings

Plaintiff requests that this matter be remanded for further development of the record. Defendant requests that if the Court overturns the decision, the matter be remanded for further administrative proceedings.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.'" Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant

1  disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility"
2  which "is properly understood as requiring courts to remand for further proceedings when, even
3  though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a
4  whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the
5  circumstances are present to remand for benefits, "[t]he decision whether to remand a case for
6  additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102
7  (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

In this instance, Plaintiff requests remand for further proceedings. In addition, the record contains evidence that creates doubt that Plaintiff is disabled. As the ALJ noted, Dr. Nishijima did not recommend any aggressive treatment for Plaintiff's feet except what Plaintiff testified to at the hearing. (AR 24.) Dr. Damania indicated during Plaintiff's consultative examination that Plaintiff's fallen arches are quite obvious when Plaintiff stands up. (AR 351.) However, there are no other positive examination findings regarding Plaintiff's feet. (AR 351.) Plaintiff had normal range of motion of her ankles, normal pulses in her feet, good motor tone bilaterally with good active motion, 5/5 strength in her extremities, grossly intact senses, and her gait was within normal limits. (AR 351.) Based on his examination finding, Dr. Damania found that Plaintiff could perform light work except she could not climb or balance. (AR 352.) Therefore, the Court finds that this action shall be remanded for further proceedings.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in evaluating the opinion of Dr. Nishijima by not providing specific and legitimate reasons supported by substantial evidence for giving little weight to the opinion. However, the ALJ did not err in evaluating the opinion of Dr. Dhingra. The Court declines to address Plaintiff's arguments that the ALJ erred in not conducting a function-by-function RFC assessment and by not including Dr. Damania's climbing and balancing limitations in the RFC.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART, and this matter is REMANDED for

further administrative proceedings consistent with this opinion.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Michelle Moreno and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **April 3, 2018**

_____
UNITED STATES MAGISTRATE JUDGE